## AMENDED TERMS AND CONDITIONS OF SALE OF REAL PROPERTY

1.  On December 10, 2009, The Woodcrest Club, Inc. (the "Debtor"), the debtor and debtor in possession, filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York, Central Islip Division (the "Court") and was assigned case number 09-79481 (DTE) by the Clerk of the Court. On January 20, 2010, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors of the Debtor (the "Creditors' Committee"). On April 14, 2010, the Court entered an order approving bidding procedures (the "Bid Procedures"). Thereafter, the Debtor and Jackson Development Group, Ltd. ("Jackson") as stalking horse, entered into a certain asset purchase agreement (the "Jackson Agreement of Sale") for the purchase and sale of the Debtor's real and personal property as provided more fully therein and below. As a result of the foregoing, the Debtor has amended the Bid Procedures, as provided below. The within Terms and Conditions of Sale supersede the original Bid Procedures and Terms and Conditions of Sale. In addition, the form of Jackson Agreement of Sale is approved and the terms and conditions of sale therein, including, but not limited to the posting of down payment deposit and requirements for Closing shall be controlled therein. Solely with respect to Jackson, to the extent of any discrepancy from the Jackson Agreement of Sale and these procedures the Jackson Agreement of Sale shall apply.

2.  These Terms and Conditions of Sale are being promulgated in connection with the proposed court authorized public sale of the Debtor's (i) real property known as Section 15; Block A; Lots 29C, 29G, 29H, 29J, 30, 56A, and 56B and located at 225 Muttontown /Eastwoods Road, Muttontown, New York 1179, which together, with all buildings and all other structures presently located on the Land, all fixtures appurtenant to the Building on the Land together with all other permits and other rights and interests appurtenant thereto, the "Real Property" and (ii) the Debtor's Personal Property, including, inventory, furniture, certain equipment, currently located on the Real Property, together with the assumption and assignment of certain unexpired executory contracts, including equipment leases, collectively, the "Personal Property".

3.  The Debtor is the owner and seller of the Real Property and Personal Property. The subject Auction and these amended terms and conditions of sale have been approved by the <u>Court</u> by order dated _____, 2010. The Auction shall be conducted by David R. Maltz & Co., Inc. ("Maltz"), the Debtor's duly retained auctioneer/real estate broker for this sale.

4.  In order to participate in the Real Property Auction, an individual or entity must submit to Maltz prior to the start of the Real Property Auction (the "Bid Deadline"): (i) a bid in writing (a "Bid") accompanied by the identity of such bidder and that of an officer or authorized agent who will appear on behalf of such bidder; (ii) a good faith deposit made by a bank check, in the amount of $1,000,000.00 (the "<u>Initial Deposit</u>"), payable to the order of "Silverman Acampora LLP, as attorneys for The Woodcrest Club, Inc."; (iii) evidence, satisfactory to the Debtor, that the bidder has the financial ability to close within thirty (30) days without contingency; and (iv) evidence, satisfactory to the Debtor, that the bidder has the ability to close the purchase no later than thirty (30) days after entry of an order approving the Bid as the highest or best offer for the Real Property included in its Bid. Any person who complies with 3(i), (ii), (iii), and (iv) above, shall be deemed a qualified bidder ("Qualified Bidder"). Notwithstanding the conditions set forth

above, Time Insurance Company ("Time") and Jackson shall be deemed a "Qualified Bidder" without the necessity of complying with the terms of this Paragraph 4, and may appear and bid at the Real Property Auction. Should Time appear and bid at the Real Property Auction, it shall not be required to post the Initial Deposit

    5.    The Real Property and Personal Property Auction shall be governed by the following specific provisions:

- (A) permit to bid at the sale only to Qualified Bidders in cash and without financing;

- (B) provide that opening bids for (i) the combination of both the Real Property and Personal Property shall start at $14,520,000 cash; (ii) the Real Property only shall start at $14,320,000 cash; and (iii) the Personal Property only shall start at $200,000 cash. Provide that (i) the combination of both the Real and Personal Property shall be auctioned first, followed by (ii) the Real Property and Personal Property individually. The winning bid shall be determined by comparing the bid for the Real Property and the Personal Property auctioned together under "i" above against the bids collectively, for the Real Property and Personal Property auctioned separately under "ii" above, subject to the Debtor in consultation with the creditors' committee and Time determining which of the bids is the higher or better offer, subject in all respects to the Court's final review and without prejudice to Jackson being heard on any such matter. Jackson shall be deemed to have made the winning bid if (i) on both Real Property and Personal Property combination if the bulk bid is the highest qualifying bid and does not exceed $14,520,000, (ii) on the Real Property only, if the Real Estate bid is less than $14,320,000 and (iii) on the Personal Property only if the Personal Property Bid is less than, $200,000.00.

- (C) Provide for the Payment to Jackson of an expense reimbursement of up to 1% of its out of pocket expenses excluding professionals (attorneys, accountants, financial advisors) and a Break Up Fee in the amount of 2% of its bid as provided in the Jackson Agreement of Sale and hereunder, which shall be payable in the event Jackson does not close on the property, from the proceeds at closing to the Successful Bidder (which shall be an expense of administration) in the event that (i) the Transaction Approval Order (as defined in the Agreement of Sale) complying with all requirements under Agreement of Sale is not entered on or before May 18, 2010, (ii) the Debtor closes on the sale of the Real Property or Real Property and Personal Property to another party; provided that Jackson has not elected to terminate the Agreement of Sale; or (iii) the Debtor is unable to consummate the transactions contemplated in the Agreement of Sale.

- (D) provide that bids shall be made in increments of $25,000.00 dollars, <u>provided, however,</u> that the auctioneer shall have the reasonable discretion to adjust the bidding increments during the Auction.

- (E) The successful Bidder must enter into the annexed memorandum of sale on no more favorable terms than the Jackson Agreement of Sale except without any contingencies, indentifying the Successful Bidder as the Purchaser and incorporating the economic terms advanced at the Auction within 48 hours of the Auction.

    6.    The Debtor or its representative will return all Initial Deposit checks to unsuccessful bidders at the conclusion of the Real Property Auction, subject only to the provisions of paragraph 9 herein governing the Initial Deposit of the Second Bidder (defined below). Within forty eight (48) hours of the conclusion of the Real Property Auction, the Successful Bidder shall deliver to SilvermanAcampora LLP, as counsel to the Debtor, a bank check, payable to the order of "SilvermanAcampora LLP, as attorneys for The Woodcrest Club, Inc.", in the amount of at least ten (10%) percent of its final bid minus the Initial Deposit (collectively with the Initial Deposit, the "Deposit"). Notwithstanding the conditions set forth above, if Time is the Successful Bidder, it shall not be required to post the Deposit unless it bids more than the total amount of its claims against the Debtor, and in such circumstances, Time shall only be required to post a deposit equal to ten (10%) of the amount by which its final bid exceeds the total amount of its

claims against the Debtor.

7. The opening bid at the Auction is to be announced at the opening of the Auction in accordance with paragraph 5 herein. Bidding increments after the opening bid shall be in a minimum of twenty-five thousand ($25,000.00) dollar increments, provided, however, that the auctioneer shall have the reasonable discretion to adjust the bidding increments during the Real Property Auction.

8. The successful bidder (the "Successful Bidder") must pay the Balance (that being defined as the difference between the successful bid and the Deposit and all closing adjustments) of the purchase price for the Real Property to the Debtor by bank check, federal funds or wire transfer at the closing of title to the Real Property (the "Closing"). In the event that Time is the Successful Bidder, Time may credit bid the total amount of its claims against the Debtor against the total amount of the Purchase Price, provided, however, that Time must provide cash sufficient to satisfy any and all Liens senior to Time's claim, including, but not limited to, any carve-outs in effect at the time of the Closing. The Successful Bidder must close title to the Real Property on or before thirty (30) days after the earlier of: (i) an Order approving the sale of the Real Property to the Successful Bidder has been entered by the Court by Court Order or (ii) the Court has entered an Order granting the Successful Bidder protection under §363 (m) of the Bankruptcy Code (the "Closing Date") and such orders have not be stayed. The Closing shall occur at the office of the Attorneys for the Debtor, Silverman Acampora LLP, 100 Jericho Quadrangle, Suite 300, Jericho, New York 11753, although the Closing Date may be extended solely by the Debtor in its discretion. **Time is of the Essence with respect to the Successful Bidder's obligation to pay the Balance of the Purchase Price on the Closing Date and failure to pay the balance of the purchase price on the Closing Date will result in the forfeiture of the Deposit and the termination of the Successful Bidders right to acquire the Real Property under this Offer and Terms and Conditions of Sale.** The Successful Bidder shall be obligated to close title to the Real Property and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel these terms of sale other than the Debtor's inability to deliver insurable title to the Real Property. Anything to the contrary contained in these Terms and Conditions of Sale notwithstanding, the Debtor shall have the right in its sole and absolute option, after consultation with the Creditors' Committee and Time, to adjourn the Closing Date in order to remedy any defect to title.

9. Unless and until the Successful Bidder tenders the full amount of its Deposit, the Debtor shall hold the Initial Deposit of the Second Bidder (as hereinafter defined). If the Successful Bidder tenders the full amount of its Deposit within forty eight (48) hours of the conclusion of the Real Property Auction, the attorneys for the Debtor shall promptly return the Initial Deposit of the Second Bidder. If, however, the Successful Bidder for the Real Property fails to tender its full Deposit within forty eight (48) hours of the conclusion of the Real Property Auction, the Debtor, at its sole and absolute option, after consultation with the Creditors' Committee and Time, shall be authorized to sell the Real Property to the second highest bidder(s) ("Second Bidder") without any further notice or approval of the Court, without giving credit for the Deposit forfeited by the Successful Bidder. The Second Bidder shall then be deemed to be the Successful Bidder. Should the Second Bidder fail to close on the Real Property, within the time

frame outlined above, the Debtor shall be authorized to retain the Second Bidder's Deposit, and sell the property to the next highest bidder without any further notice or approval of the Court.

10. The Real Property is being sold in accordance with 11 U.S.C. Section 363, **"AS IS", "WHERE IS"** in its condition on the Closing Date, <u>without</u> any representations, covenants, guarantees or warranties <u>of any kind or nature whatsoever</u>, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the net proceeds of sale, and is subject to, among other things,: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and/or (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof. By delivering the Initial Deposit, all bidders acknowledge that they have had the opportunity to review and inspect the Real Property and the form of the Bargain and Sale Deed Without Warranties (the "Deed") that the Debtor will execute to convey the Real Property and will rely solely thereon and on their own independent investigation and inspection of the Real Property in making their bid. Neither the Debtor nor any of its representatives make any representations or warranties with respect to permissible uses of the Real Property, including, but not limited to the zoning of the property, the environmental condition of the Real Property, or any other matters associated thereto. All bidders acknowledge that they have conducted their own due diligence in connection with the Real Property, and are not relying on any information provided by the Debtor or its professionals.

11. The Debtor shall convey the Real Property by delivery of a Deed for the Real Property. With regard to the Real Property, the quality of title shall be that which a reputable title insurance company authorized to do business in the State of New York willing to insure. At the Debtor's option, it may arrange for the issuance of a title insurance policy by such insurer, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder.

12. Neither the Debtor, Debtor's counsel nor other retained professionals, including the auctioneer/real estate broker and the estate of the Debtor, are liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Court, <u>provided</u>, <u>however</u>, the Licensed Real Estate Broker who registers the successful bidder, if any, in accordance with the Broker Participation Agreement, a form of which is annexed hereto, and has received confirmation of receipt and acknowledgement of valid registration by Maltz shall receive from the gross proceeds of the sale a 2% commission.

13. It is expressly understood that the Debtor shall <u>not</u> incur any cost or expense whatsoever in connection with the sale of the Real Property, and the Successful Bidder herewith undertakes to pay any such expense of whatever kind or nature even those costs and expenses which are payable by the Seller pursuant to any law or statute.

14. Nothing contained in this Offer and Terms and Conditions of Sale is intended to supersede or alter any provisions of the Bankruptcy Code or otherwise limit or interfere with the jurisdiction of the Court. The Debtor reserves the right, after consultation with the Committee, to offer the assets in alternative ways to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Court.

15. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference, at the

public sale of the Real Property. By making a bid for the Real Property, all bidders will be deemed to have acknowledged having read this Offer and Terms and Conditions of Sale and having agreed to be bound by them.

16. If the Debtor is unable to deliver title to the Real Property in accordance with these terms of sale for any reason whatsoever, its only obligation will be to refund the Deposit, <u>without</u> interest, and the purchaser will have no recourse against the Debtor, Debtor's counsel or any Broker or Auctioneer previously approved by Order of the Court.

17. The sale of the Real Property and the Personal Property is subject to confirmation by the Debtor and the Court. The attorneys for the Debtor shall notify the Successful Bidder(s) in writing within forty-eight (48) hours after the public sale actually is held and concluded.

18. By participating in the Auction, all bidders consent to the jurisdiction of the Court to determine such disputes under the Debtor's pending case. Any disputes concerning the sale of the Real Property and or Personal Property shall be determined by the Court which shall retain sole and exclusive jurisdiction over all matters relating to the Real Property and the sale contemplated by these Terms and Conditions of Sale.

19. Notwithstanding anything contained herein to the contrary, any determination by the Debtor as to the highest or best offer hereunder shall be subject to final review by the Court without prejudice to Jackson's rights to be heard on such issue.

20. In the event that no higher or better offers are received by the Debtor at the Auction, the Debtor shall seek to approve the sale to Jackson in accordance with the Jackson Agreement of Sale.

21. Pursuant to Bankruptcy Rule 6004-1 no appraiser, auctioneer or officer, director, stockholder, agent, employee or insider of any appraiser of auctioneer, or relative of any of the foregoing, shall purchase, directly or indirectly, or have a financial interest in the purchase of, any property of the estate that the appraiser or auctioneer has been employed to appraise or sell.

MEMORANDUM OF SALE

The undersigned, this ___ day of _____ 2010, makes an offer to purchase the Real Property with the Section 15; Block A; Lots 29C, 29G, 29H, 29J, 30, 56A, and 56B and located at 225 Muttontown Eastwoods Road, Muttontown, New York 1179 for the sum of _____ DOLLARS ($_____) and hereby promises and agrees to comply with the terms and conditions of sale of the Real Property, as set forth in the annexed Terms and Conditions of Sale.

OFFEROR/BIDDER:


By: _____
Name:
Title:

Address:

Telephone:
Facsimile:

Received from _____ the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Real Property pursuant to the Terms of Sale.

Receipt of Deposit Acknowledged:

_____